# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| TRAVIAN S. GREEN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV410-175 |
| | ) | CR408-315 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Travian Green, presently incarcerated at a federal women's prison in Marianna, Florida, has filed a motion under 28 U.S.C. § 2255 challenging the sentence this Court imposed following the acceptance of her guilty plea to a drug conspiracy charge. (Doc. 1.)[1] In Ground One, Green contends that the Court erred in imposing a two-level enhancement of her guidelines offense level for possession of a firearm during the drug conspiracy. (Id. at 5.) She claims in Ground Two that in calculating her advisory guidelines sentence the Court held her

---

[1] Unless otherwise noted, citations are to the docket in Green's civil § 2255 case, number CV410-175. "Cr. doc." refers to documents filed under her criminal case, CR408-315. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal, printed pagination.

responsible for marijuana found in her residence, even though her indictment did not reference marijuana. (*Id.* at 6.) Finally, in Ground Three, Green contends that she was denied effective assistance of counsel because her attorney informed her that she could not take a direct appeal and that he would not represent her on appeal. (*Id.* at 8.)

After conducting an evidentiary hearing on Green's ineffective assistance of counsel claim, the Court has determined that there is no merit to her contention that her attorney deprived her of her right to pursue a direct appeal. Thus, she is not entitled to an out-of-time appeal in this case. Since Green neglected to pursue a timely appeal, and since she has shown no cause or prejudice for her failure to do so, her substantive challenges to her guidelines sentence set forth in Grounds One and Two are procedurally defaulted. But even if not defaulted, those claims fail.

## I.    BACKGROUND

Green was one of 45 defendants named in a 166-count indictment with participating in a conspiracy to distribute large quantities of powder cocaine, crack cocaine, and marijuana. (Cr. doc. 3 (indictment) at 1.)

The indictment further charged Green with using a telephone to facilitate the drug conspiracy. (*Id*. (Counts 74, 75, 119, 125, & 142).) The Court appointed Savannah attorney Christopher R. Jordan to represent Green. (Cr. doc. 169.) It is undisputed that he was a vigorous advocate for his client, filing numerous motions, meeting frequently with her and members of her family, and keeping detailed notes about his work in the case.

Green, with the aid of her attorney, eventually negotiated a written plea agreement with the government. (Gov't ex. 4 (cr. doc. 830).) Under that agreement, Green pleaded guilty to conspiracy to possess with intent to distribute and distribute an unspecified quantity of powder cocaine.[2] A probation officer prepared a presentence investigation report ("PSI") that calculated a total of guidelines offense level of 35 and a criminal history category of II, resulting in a guidelines range of 188 to 235 months' imprisonment. (PSI ¶ 66.)

Green, through her attorney, filed numerous objections to the PSI,

---

[2] Count One of the indictment charged a conspiracy to possess and distribute 5 kilograms or more of powder cocaine, 50 grams or more of crack cocaine, and 50 kilograms or more of marijuana. (Gov't ex. 1 at 6.) Thus, Green pled to a lesser included offense charged in Count One.

including a denial that she possessed (for guidelines purposes) an AR-15 firearm found in a shed behind her residence and a contention that the 5 pounds of marijuana seized from her residence did not belong to her and therefore should be excluded in calculating her base offense level. (PSI Addendum.) The district judge overruled Green's objections and adopted the factual findings and guidelines calculations of the PSI. (Cr. doc. 1211 at 5-6.).) Given Green's assistance in the prosecution of other targets of the investigation, the government moved for a downward departure pursuant to U.S.S.G. § 5K1.1. (Cr. doc. 626 at 3.) The district judge granted the motion and sentenced Green to serve 80 months in prison, *108 months below the minimum advisory guidelines range*. (Cr. doc. 849 (judgment).). The district judge then emphasized to Green the highly favorable nature of the sentence he had imposed:

> The Court: Ms. Green, before you go, I don't think I need to tell you -- and I know your lawyer will tell you -- you could have received a sentence today 3 times as long as the sentence you got today. Do you understand that?
>
> Green: Yes, sir.

(Cr. doc. 1211 at 18.) The district judge further informed Green that she had the right to appeal her sentence, that she was entitled to the

assistance of counsel on appeal, and that the Court would appoint counsel to represent her on appeal if she was unable to afford one. (*Id*.). Green did not file an appeal.

## II.   ANALYSIS

### A.   Ineffective Assistance of Counsel

Green claims that her attorney was ineffective when he informed her "that I could not appeal my conviction or sentence due to the fact that I had signed a plea agreement" and that "he would not represent me if I wanted to appeal the conviction or sentence." (Doc. 1 at 8-9.) In its response to Green's § 2255 motion, the government furnished an affidavit from Green's attorney refuting these allegations. (Doc. 6-1 at 2 (Jordan represents that he never told Green that her guilty plea prevented her from appealing or that he would not file an appeal or represent her on appeal).) Given this factual dispute, the Court determined that an evidentiary hearing was needed. (Doc. 7.)

At the hearing Green admitted that Jordan conferred with her for some 5 to 10 minutes immediately after sentencing, but her memory of that meeting differs remarkably from Jordan's recollection. She

testified that Jordan told her that once she accepted the plea agreement "there would be no appeal." She conceded that she was pleased with the length of her sentence but unhappy about the district judge's decision to increase her offense level for possession of a firearm during the drug conspiracy. She explained that this finding had the effect of denying her the opportunity of participating in the Bureau of Prisons' Residential Drug Abuse Program ("RDAP").[3] She testified that when she voiced this concern to Jordan, he said there was nothing he could do about the

---

[3] According to the Federal Bureau of Prisons website,

RDAP is the Bureau's most intensive [drug] treatment program. It . . . follows the [cognitive behavioral therapy] model of treatment wrapped into a modified therapeutic community model in which inmates learn what it is like living in a pro-social community. Inmates live in a unit separate from general population, participate in half-day programming and half-day work, school, or vocational activities. RDAP is typically nine months in duration. The Bureau and National Institute on Drug Abuse combined funding and expertise to conduct a rigorous analysis of the Bureau's RDAP. Research findings demonstrated that RDAP participants are significantly less likely to recidivate and less likely to relapse to drug use than non-participants. The studies also suggest that the Bureau's RDAPs make a significant difference in the lives of inmates following their release from custody and return to the community.

Federal Bureau of Prisons Website, http://www.bop.gov/inmate_programs/substance.jsp (last visited May 17, 2011). In a post-hearing brief the government explained that, contrary to Green's assumption, the district judge's decision to increase her offense level under U.S.S.G. § 2D1.1(b)(1) because she possessed a firearm did not bar her participation in the RDAP (though it did make her ineligible for early release consideration under that program). (Doc. 14-1.) Green has not challenged that representation.

gun enhancement finding. While she never claimed to have specifically directed Jordan to file an appeal, she contends that Jordan failed to ask her if she wanted to appeal or inform her of the advantages and disadvantages of pursuing an appeal.

Mr. Jordan offered testimony that directly contradicted Green's core contentions. Jordan testified that before Green signed the plea agreement he spent considerable time explaining the terms of that agreement and specifically discussed with her the fact that she was *not* waiving her right to appeal.[4] Once the probation officer prepared the draft PSI, Jordan carefully reviewed that document with Green and identified possible objections. Counsel then persuaded the probation officer to revise the PSI, reducing Green's criminal history category and lowering her advisory guidelines range.[5] While counsel could not persuade the probation officer to adopt Green's position that she never

---

[4] The plea agreement itself references the fact that it did not contain an appeal waiver. (Gov't ex. 4 at 1.)

[5] Counsel memorialized his discussion with the probation officer, noting that under the reduced criminal history category Green's sentencing range would likely be 15 to 19.5 years. He then noted that assuming she received a favorable § 5K1.1 reduction, she might possibly receive only a 10 to 15 year sentence. (Gov't ex. 6.) As discussed earlier, Green's actual sentence (6 years and 8 months) was substantially lower than counsel's most optimistic prediction of what his client might receive.

possessed the AR-15 or the marijuana discovered during a search of her residence, and while he had little hope of prevailing on these issues at sentencing, he preserved those issues in his objections to the final PSI. (PSI Addendum; gov't ex. 10).) At sentencing, Jordan raised the gun enhancement issue and explained that Green would likely be denied admission into the RDAP if the Court decided to impose the enhancement. (Cr. doc. 1211 at 9-10.) The district judge rejected this argument and all of Green's other objections to the PSI, adopting the probation officer's findings and conclusions in their entirety. (Cr. doc. 1211 at 4-6.)

Jordan testified that immediately after sentencing he met with Green and discussed in detail "each component of the sentence," including the fact that the district judge had rejected her objections to the PSI. Although Green indicated that she was well satisfied with her sentence, Jordan informed her that she could still appeal if she wished to do so. However, he did not recall specifically asking her if she wanted to appeal. According to Jordan, at no point did Green give any indication that she desired to appeal. Instead, she expressed her "gratitude" for his services and made clear that what she wanted counsel to do was help her

prepare for her anticipated testimony against a fellow coconspirator (one of her cousins). Jordan testified that if Green had asked him to file an appeal he would have done so. He denied ever telling Green that his representation was at an end. He pointed out that when he met with her again the week after the sentencing proceeding, she made no request for an appeal during that meeting.

The Court fully credits Mr. Jordan's testimony and rejects Green's testimony to the extent that it differs from his. Jordan was a most believable witness. He had been a diligent and highly effective advocate for his client, a fact she does not dispute. Unlike Green, Jordan made detailed notes as the case progressed, memorializing many of his conversations with Green and the probation officer. He also sketched out in great detail the arguments that he intended to raise to the PSI and at sentencing. These notes reflect that he preserved arguments that Ms. Green wanted to make even though he concluded that these arguments had little chance of success. It is obvious on this record that Mr. Jordan labored for his client, obtained a favorable plea agreement for her, thoroughly prepared for the sentencing proceeding, and achieved a result

that was remarkably favorable for his client. Green's testimony that, after receiving such an unexpectedly lenient sentence, she remained unhappy about some aspects of the PSI and conveyed her displeasure to Jordan is simply not believable. The Court finds Mr. Jordan's memory of his post-sentencing discussions with his client to be an accurate portrayal of what happened during that meeting. Specifically, the Court finds that Green never asked her attorney to file an appeal or gave any indication that she was displeased with the sentence or was even contemplating an appeal. The Court further finds that Jordan never suggested to Green that her guilty plea precluded her from appealing or that he would not represent her if she elected to appeal.

It is well settled that the Sixth Amendment guarantees criminal defendants the right to "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*'s "now-familiar test," a "defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' . . . and (2) that counsel's deficient performance prejudiced the defendant . . . ." *Roe v. Flores-Ortega*, 528

U.S. 470, 476-77 (2000) (quoting *Strickland*, 466 U.S. at 688).

*Flores-Ortega* concluded that *Strickland* provides the proper framework

for evaluating a claim that counsel was constitutionally ineffective for

failing to file a notice of appeal. *Id.* at 477. Of course, an attorney who

disregards his client's specific instructions to file an appeal "acts in a

manner that is professionally unreasonable." *Id.* (citations omitted).

Conversely, an attorney who follows his client's explicit instructions *not* to

file an appeal cannot be said to perform deficiently. *Id.* *Flores-Ortega*

addressed the middle ground between these poles, i.e., whether an

attorney is "deficient for not filing a notice of appeal when the defendant

has not clearly conveyed his wishes one way or the other." *Id.* While

the Supreme Court did not doubt that the "better practice" is for counsel

routinely to consult[6] with his client about an appeal, *id.* at 479, the Court

declined to hold "as a *constitutional* matter, that in every case counsel's

---

[6] The Court defined the term "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. Generally, in cases where a defendant never clearly indicated whether or not he desired to appeal, a reviewing court should first determine if counsel consulted with his client; if not, the court must decide, using the "circumstance-specific reasonableness inquiry required by *Strickland*," whether counsel had a duty to consult with the defendant about an appeal. *Id.*

failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id*. (emphasis in original). Instead, where a defendant has not specifically instructed his attorney to file an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

In the wake of *Flores-Ortega*, the Eleventh Circuit has recognized a number of instances where an attorney had no duty to consult with a criminal defendant about an appeal. *Gaston v. United States*, 318 F. App'x 750 (11th Cir. 2008) (counsel had no duty to consult where there were no nonfrivolous grounds for appeal because defendant had received a sentence at the low end of the guidelines range and had signed an appeal waiver, defendant gave no indication that he wanted to appeal, and no rational defendant would have filed an appeal); *United States v. Devine*, 1286 (11th Cir. 2008) (counsel had no duty to consult where defendant,

who pleaded guilty and received a sentence at the bottom of the guidelines range, had no nonfrivolous grounds for appeal, waived his right to appeal, and never demonstrated to counsel that he was interested in appealing); *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) (same) ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal.   In some cases, the Sixth Amendment requires consultation; in others, it does not.").

In this case, the Court will assume that Mr. Jordan did not "consult" with his client as the Supreme Court defined that term in *Flores-Ortega*, for the government offered no evidence that he advised his client "about the advantages and disadvantages of taking an appeal" or specifically asked her whether she wanted to file an appeal.   528 U.S. at 478.   But under the totality of the circumstances presented in this case, the Court is convinced that Mr. Jordan had no constitutional duty to consult with his client.   First, the Court has credited counsel's testimony that Green never showed any interest whatsoever in appealing her conviction or sentence.   Instead, she gave her attorney the impression that she was entirely satisfied with her sentence and desired only that he assist her in

fulfilling her cooperation agreement with the government. Nor would any rational defendant have wanted to appeal a sentence, imposed after the defendant entered a guilty plea, that was *substantially* below the minimum guidelines range. *Flores-Ortega* made quite clear that a defendant's decision to enter a guilty plea is "a highly relevant factor" in determining whether counsel is under a duty to consult with the defendant about an appeal, for such a plea may reflect a defendant's decision to "seek[] an end to judicial proceedings." 528 U.S. at 480. Another relevant consideration is whether the defendant received the sentence she bargained for.[7] *Id.* In this case, of course, defendant not only entered a guilty plea but received a sentence far more lenient than her attorney predicted she might receive.

In light of such a favorable sentence, filing an appeal to challenge the district judge's findings regarding the gun-enhancement issue or marijuana-possession issue would have been fraught with danger, for a

---

[7] The Court noted that another relevant factor is whether the defendant waived some or all of his appeal rights. *Flores-Ortega*, 528 U.S. at 480. While such a waiver is a relevant consideration in assessing the totality of the circumstances, the Court never suggested that such a waiver is determinative or a necessary condition to finding counsel had no duty to consult.

successful appeal on these issues would have resulted in a remand and resentencing, not an overturning of Green's conviction. No rational defendant would have taken the chance of receiving a less favorable sentence at re-sentencing than the 80-month sentence originally imposed. Courts have discretion in these matters, and on a different day the district judge, if armed with new post-sentencing information, may have imposed a much longer sentence than Green initially received. *See Alabama v. Smith*, 490 U.S. 794, 797-98 (2001) (where a defendant succeeds in having a sentence set aside on appeal, a resentencing judge may impose an increased sentence, consistent with due process of law, so long as he offers reasons showing that the heightened sentence is not the product of vindictiveness) (citing and explaining *North Carolina v. Pearce*, 395 U.S. 711 (1969)); *Texas v. McCullough*, 475 U.S. 134, 142 (1986) (*Pearce* permits a resentencing judge to justify an increased sentence by pointing to relevant conduct that occurred subsequent to the original sentencing proceedings); *see also Pepper v. United States*, ___ U.S. ___, 131 S. Ct. 1229, 1250-51 (2011) (when a court of appeals remands for *de novo* sentencing, the sentencing judge is not bound by his prior determination;

the law of the case doctrine does not apply).[8]  Counsel had no duty to consult with Green under these circumstances.

Nor has Green shown that she suffered actual prejudice as a result of her attorney's failure to consult with her about an appeal.  "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.  Green has failed to demonstrate that she had any grounds to assert on appeal likely to be found meritorious, for the district judge's factual findings that she possessed the marijuana and the firearm seized during the search of her property were well supported by the record and subject to deference by an appellate court.  *See, e.g.*, *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995) (court of appeals reviews district court factual findings at sentencing "for clear error

---

[8] Also, even if Green had succeeded on appeal in overturning the gun-enhancement finding, there is no guarantee that she would have been admitted to the RDAP,  for such programs have limited capacity and are notoriously difficult to get into.  *See* JaneAnne Murray, *BOP's RDAP Program Over-Subscribed and Thus Under-Delivering Both in Treatment and Sentence Reduction*, New York Federal Criminal Practice, July 21, 2008, www.nyfederalcriminalpractice.com/2008/07/bops-rdap-program-oversubscrib.html (reflecting a RDAP waiting list of 7000 inmates in July 2008).  It therefore would have been exceedingly risky for Green to appeal given such a speculative benefit.

only")[9]   In preparing for the sentencing hearing, Jordan advised Green that her challenges to the PSI's findings on these points were not likely to be accepted by the district judge, so she knew they were considered by counsel to be weak arguments.   Had counsel properly consulted with Green, he would have further advised her that pursuing an appeal in order to raise such arguments carried the risk of a less favorable sentence on remand should she even prevail in the appellate court.   Given the highly favorable sentence she had received, this advice would have persuaded all but the foolhardy to forego an appeal.   In sum, Green has not shown that had she "received reasonable advice from counsel about the appeal, [s]he would have instructed [her] counsel to file an appeal."

---

[9] As the *Hall* court held, once the government offers persuasive evidence that the defendant possessed a firearm at the site of the charged offense, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." 46 F.3d at 63.   It is undisputed here that agents recovered an AR-15 firearm from a shed located some 10 feet behind Green's residence and that she furnished the agents with a key to that shed.   (PSI, probation officer's response to defendant's objections).   Once the district judge adopted the probationer officer's position that Green possessed the 5 pounds of marijuana found inside her residence, he clearly had a sound basis for concluding that the firearm was present at the site of the offense conduct.   *See United States v. Gomes*, 407 F. App'x 363, 364-65 (11th Cir. 2011) (applying *Hall* and upholding enhancement where gun found in a container in a bedroom closet while most of the drug related activity occurred in the living room and outdoors).   Certainly defendant has not made any showing that a connection between the weapon and the offense is "clearly improbable."

*Id.* at 486.

While the Supreme Court contemplated that counsel would have a duty to consult about an appeal "in the vast majority of cases," *Flores-Ortega*, 528 U.S. at 481, it squarely rejected the notion that a defense attorney has a *per se* duty to "always consult with the defendant regarding an appeal." *Id.* Here, Green was understandably delighted with a sentence that, as the district judge emphasized, was far below the minimum advisory sentence called for under the guidelines. She was also aware of counsel's view that she had no potentially meritorious grounds to assert on appeal. Rather than indicating in any way that she was interested in pursuing an appeal, Green asked counsel to help her attend to another matter. Under these circumstances, counsel was not constitutionally ineffective for failing to advise his client about the advantages and disadvantages of taking an appeal or specifically asking her whether she wanted to appeal.

## B.    Remaining Claims

In Ground One of her motion, Green contends that the sentencing judge erred by enhancing her sentence for possession of the AR-15.

(Doc. 1-2 at 5; doc. 1 at 3-6.)   In Ground Two, she contends that her sentence was improperly enhanced based upon marijuana seized from her home, since she did not plead guilty to possessing the marijuana and it was not in the indictment.[10]   (Doc. 1-2 at 6; doc. 1 at 7-8).   Both claims are procedurally defaulted, since she could have raised them on appeal but did not.   Additionally, both claims fail even absent her default.

A § 2255 motion may not be used as a "surrogate" for the missed direct appeal.   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *see Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255

---

[10] Ground Two could be read as raising, at least in part, an ineffectiveness claim.   Green states that she was not fully informed about all the charges in the indictment.   (Doc. 1-2 at 6; doc. 1 at 7-8.)   To the extent she intended to raise it as an attorney ineffectiveness claim, it is not subject to the procedural default rule, since attorney ineffectiveness claims "may be brought in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).   But while she frames it as an error in the indictment, it is really a sentencing claim.   Her chief concern is that she was "punished" -- her sentencing range was enhanced -- based upon marijuana, even though she pled guilty only to a cocaine offense.

She states that Jordan did not properly explain to her that the marijuana could factor into her sentencing.   (Doc. 1-2 at 6.)   The Court, however, credits Jordan's hearing testimony that he spent a considerable amount of time going over the indictment and plea agreement with Green in detail, explaining to her that both the marijuana she admitted to possessing, in addition to the marijuana seized from her home (*see* PSI ¶¶ 23-27) that she denied possessing, could constitute "relevant conduct" in the Court's sentencing calculations.   Moreover, the district judge explained relevant conduct to her at the change of plea hearing.   (Cr. doc. 1210 at 14.)   Accordingly, any ineffectiveness claim fails.   Jordan simply did not render deficient performance.

will not be allowed to do service for an appeal). A movant "generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [she] is barred from presenting the claim in a § 2255 proceeding." *Lynn*, 365 F.3d at 1234; *Hill v. United States*, 317 F. App'x 910, 913-14 (11th Cir. 2009). Since Green's claims could have been raised on direct appeal, the Court need not consider them on the merits unless she can establish cause and prejudice excusing her default (or establish her actual innocence). *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000).

Green has not offered any basis for finding cause and prejudice as to Ground One aside from suggesting her innocence of the enhancement (but *not* the conspiracy charge to which she pled guilty). (Doc. 1 at 6.) The Court is not aware of any Eleventh Circuit authority allowing a movant to use actual innocence of a sentencing enhancement as a gateway through procedural default. The only case where the Eleventh Circuit has suggested such a possibility, *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010), was vacated for rehearing *en banc*. 625 F.3d 716

(11th Cir. 2010). But even if it could be used in such a manner, Green simply restates her argument made before the sentencing judge. To come within that "exceedingly narrow" exception for actual innocence, *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2007), a movant must present "new reliable evidence" establishing her innocence. *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Green has offered no such evidence.

Turning to Ground Two, Green avers that she did not raise it on appeal because Jordan misled her as to her appellate rights. (Doc. 1-2 at 7.) While "constitutionally '[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted), the Court does not credit Green's averment. Jordan's hearing testimony, which the Court accepts as true, shows that he did no such thing. Hence, Green has not shown cause and prejudice excusing her default of that ground either.

Even absent the default, Green's Ground One claim fails because is not cognizable under § 2255. She has not raised it as a constitutional claim but simply complains that the sentencing judge misapplied the

guidelines.   As the Eleventh Circuit recently explained:

> Unless the claimed error involves a lack of jurisdiction or a constitutional violation, § 2255 relief is limited. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).   An error that is not jurisdictional or constitutional will form the basis for § 2255 relief only where "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."   *Id.* at 185, 99 S.Ct. at 2240.   A non-constitutional error that results in a miscarriage of justice "should present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."   *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) (quotation omitted).

*Ayuso v. United States*, 361 F. App'x 988, 991 (11th Cir. 2010); *see also Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) ("Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255."); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994); *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995).   Green's plain-vanilla sentencing dispute does not involve the kind of fundamental defect in the validity of the sentencing court's proceedings that would rise to the level of a miscarriage of justice.   *Ayuso*, 361 F. App'x at 991; *see Davis v. United States*, 417 U.S. 333, 346-47 (1974) (finding the complete

miscarriage of justice exception applied where subsequent statutory interpretation showed a movant was convicted for acts that the law did not make criminal).

And while Ground Two may be pass the cognizability test, it is still a sure loser. The marijuana Green complains of was brought in as "relevant conduct," and both the plea agreement and Jordan advised her that this would be the case. (*See* cr. doc. 830 at 6.) It matters not that she pled guilty solely to a cocaine count or that the specific marijuana that made up the enhancement was not in the indictment. It is well established that drug quantity calculations at sentencing may include other, non-charged drugs, and the sentencing judge need only find the drug quantity amount based upon the preponderance of the evidence standard. *See United States v. Hickman*, 175 F. App'x 322, 325 (11th Cir. 2006) ("a district court may use extra-verdict enhancements . . . such as a drug quantity determination, to increase a defendant's base offense level" under the Sentencing Guidelines); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005).

## IV. CONCLUSION

The Court is convinced that Jordan performed admirably in his representation of Green by vigorously representing her during every stage of the proceedings, securing an excellent plea agreement, and obtaining a favorable sentence. He was not constitutionally deficient in neglecting to consult with her more thoroughly about an appeal, nor has she shown that, but for counsel's less than perfect consultation, she would have appealed. The remaining grounds are procedurally defaulted. Additionally, Ground One is noncognizable and Ground Two fails on the merits. Since all of Green's claims fail, her § 2255 motion (doc. 1) should be **DENIED**.

Moreover, applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an

appeal would not be taken in good faith.   Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.   28 U.S.C. § 1915(a)(3).

   **SO REPORTED AND RECOMMENDED** this   18th   day of May, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT of GEORGIA**